UNITED STATES DISTRICT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-60359 CIV-MIDDLEBROOKS/JOHNSON

JOSEPH NEWMAN, as Deputy Director of the
Housing Authority of the City of Fort Lauderdale,

        Plaintiff,

vs.

THE HOUSING AUTHORITY OF THE CITY
OF FORT LAUDERDALE,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This Cause comes before the Court on Defendant The Housing Authority of the City of Fort Lauderdale's ("Housing Authority") ("Defendant") Motion for Summary Judgment (DE 25), filed on September 18, 2006. The Court has reviewed the record and is fully advised in the premises.

**I. Background**

Plaintiff Joseph Newman ("Newman") filed this complaint in the 17th Judicial Circuit Court in Broward County, Florida, alleging violations of the Florida Public Whistleblower's Act ("FPWA") and the First Amendment to the United States Constitution. Defendant removed the case to this Court on March 22, 2006. The case has progressed through the discovery phase, and Defendant now moves this Court for an entry of summary judgment on all claims. Plaintiff has filed a memorandum in opposition to Defendant's motion for summary judgment.

## II. Facts

The following facts are undisputed for the purposes of summary judgment. Plaintiff was a 19-year employee of the Defendant, and at the time of his leaving employment, he was the deputy director of Defendant. In this role, Plaintiff reported directly to Philip Goombs ("Goombs"), who was the executive director of Defendant. Goombs was a named defendant in this suit until Plaintiff filed a Notice of Voluntary Dismissal as to this individual on October 10, 2006 (DE 32). Goombs and the Plaintiff worked together for approximately 19 years.

On or about June 22, 2005, the Housing Authority received an anonymous letter that raised certain complaints about Goombs. Plaintiff had no involvement in generating the letter, and he was unaware of the allegations of impropriety that were made in the letter. *See* Deposition of Newman at 75 ("Obviously I was not involved nor did my staff tell me they were involved in it."). The anonymous letter was the first time that Plaintiff had heard about the issues contained therein, and he had not on any previous occasion raised any of the issues in the letter to anyone at the Housing Authority. *Id.* at 77.

The Board of Commissioners of the Housing Authority voted to initiate an investigation to establish the truthfulness of any allegations of impropriety contained in the letter. Defendant had its outside counsel, Frank Henry, investigate the allegations and interview Housing Authority employees in mid-July 2005. Plaintiff was one of the employees Mr. Henry spoke with in connection with the investigation.

After Mr. Henry completed his investigation, he prepared a report for the Board of Commissioners. The Board then ordered a second investigation, which was carried out by A-1 Investigative Agency, Inc. That agency issued its own report to the Board.

During Plaintiff's meeting with Mr. Henry, he did not report any wrongdoing or

improprieties related to any allegations in the anonymous letter. *See* Deposition of Newman at 83. Additionally, Plaintiff stated that he never had any conversations with Goombs about the letter, nor did he complain about wrongdoing or violations of the law to Goombs or anyone else at the Housing Authority. *Id.* at 90-91. The Plaintiff did have several conversations with Board member Tam English, where Mr. English asked Plaintiff whether he had any knowledge of the allegations made in the letter. *See* Deposition of English at 11-12.

Prior to the anonymous letter and subsequent investigations, Plaintiff indicated to Goombs that he would be leaving his employment with the Housing Authority. *See* Deposition of Newman at 165, 168. On October 18, 2005, Plaintiff met with Goombs and requested a severance package upon leaving the Housing Authority. *Id.* at 208. Plaintiff told Goombs that his last day of work would be November 4, 2005, and he requested that the Housing Authority state that his position was being eliminated because of "restructuring." *See* Tab A to Goombs Declaration (memo from Newman to Goombs). The Board of Commissioners did not approve Plaintiff's severance package.

After a medical leave of absence in late November 2005, Plaintiff resigned from the Housing Authority. Plaintiff stated that he resigned due to hostility from Goombs, the departure of Commissioner English from the Board of Commissioners, and his belief that if he had returned to work after his medical leave he would have been fired. *See* Deposition of Newman at 175-176.

Despite Plaintiff's resignation, neither Goombs, the Board of Commissioners, nor anyone else at the Housing Authority had ever told Plaintiff that he was at risk of being fired. *Id.* at 198-199, 201-204. While Plaintiff was still working at the Housing Authority, in April 2005, he set up a business in Knoxville, Tennessee. *Id.* at 153. Plaintiff indicated that he had been planning on moving to that location, and that is where Plaintiff currently resides. Plaintiff's stated reason for

bringing this suit was a "hostile work environment and his integrity." *Id.* at 49.

### III. Analysis

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In applying this standard, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in their favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Further, conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment. *See Earley*, 907 F.2d at 1081. The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

### A. FPWA Claim

Plaintiff's first claim is for a violation of the Florida Public Sector Whistleblower's Act, Fla. Stat. §112.3187-§112.31895. Section 112.3187(2) of the Florida Statutes, the FPWA, prohibits retaliatory action against an employee "who reports to an appropriate agency violations of law on the part of a public employer or independent contractor." Plaintiff alleges that he participated in the investigation of the anonymous letter concerning potential legal violations by Goombs, and as a result of this participation, Goombs retaliated against him.

In analyzing Florida private and public sector whistleblower actions, courts apply the same standard that is used for Title VII retaliation claims. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000) (analyzing Florida private sector claim under Title VII retaliation standard); *Rice-Lamar v. City of Ft. Lauderdale*, 2002 Fla. App. LEXIS 6601, No. 4 D01-1934, 2002 WL 985439 *6 (Fla. 4th DCA May 15, 2002) (analyzing Florida public sector claim under Title VII retaliation standard); *see also Allocco v. City of Coral Gables,* 221 F.Supp. 2d 1317, 1367 (S.D. Fla. 2002).

To establish a violation of the FPWA, Plaintiff must prove that 1) he engaged in statutorily protected expression; 2) he suffered an adverse employment action; and 3) the adverse employment action was causally linked to the statutorily protected activity. *See Sierminski*, 216 F.3d at 950.

Defendant first argues that Plaintiff did not engage in statutorily protected expression. Section 112.3187(5) refers to what information must be disclosed in order for the FPWA to apply.

> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents

> a substantial and specific danger to the public's health, safety, or welfare.
>
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Subsection 7 states that the FPWA protects "employees .... who are requested to participate in an investigation ... ." Fla. Stat. §112.3187(7). Since Plaintiff did participate in an internal investigation, there is no question that he falls within the purview of the statute, provided that his disclosures were of a type that the statute protects.

Defendant argues that while Plaintiff said to Mr. Henry during the investigation that he had problems with Goombs, he did not reveal any specific information about the allegations in the letter at any point during the investigation. Plaintiff's own deposition supports this argument, as he stated that he did not have any information concerning allegations in the letter. *See* Deposition of Newman at 83, 90-91. Plaintiff's opposition memorandum does not cite facts in support of the argument that he disclosed protected information during the investigation, rather it makes conclusory statements unsupported by the record. The FPWA does not apply unless an employee both participates in an investigation and reveals information concerning potentially illegal activities as part of that investigation. Per the statute, the information disclosed must be of a particular type for the employee to come within the protective scope of the FPWA. *See* Fla. Stat. §112.3187(5).

However, Plaintiff also revealed potentially protected information to Commissioner English, who was conducting his own investigation into the allegations in the anonymous letter. *See* Deposition of English at 11-13, 49-50. Commissioner English sought information from Plaintiff, and Plaintiff provided relevant information on potential illegalities to him. The language

of the FPWA supports the argument that Plaintiff's conversations with Commissioner English fall within the statute. Section 112.3187(6) states that for disclosures concerning a local government entity, the "information must be disclosed to a chief executive officer .... or other appropriate local official." At the time of Plaintiff's conversations with him, Mr. English was on the Board of Commissioners for the Housing Authority. It is clear that this position would make him an "appropriate local official" under the FPWA. Therefore, the Court finds that Plaintiff's conversations with Commissioner English qualify as statutorily protected expression under the FPWA.

Plaintiff must next prove that he suffered an adverse employment action due to his statutorily protected disclosures. In this case, Defendant did not fire Plaintiff, rather Plaintiff chose to resign from the Housing Authority. "Employee resignations are presumed to be voluntary. This presumption will prevail unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted." *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995).

Therefore, Plaintiff must prove that his resignation was equivalent to a constructive discharge. The Court's search did not reveal any decisions addressing constructive discharge in the context of §112.3187. As a result, the Court will use the Eleventh Circuit's analysis of constructive discharge in First Amendment cases arising under 42 U.S.C. §1983, as this is a close parallel to the present case.

"To prove constructive discharge, Plaintiffs must demonstrate that working conditions were so intolerable that reasonable persons in their position would have felt compelled to resign. Furthermore, for a constructive discharge claim to present a jury issue and thereby survive summary judgment, the plaintiff must produce substantial evidence that conditions were

intolerable." *See Akins v. Fulton County*, 420 F.3d 1293, 1302 (11th Cir. 2005), *citing Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002). In *Akins*, the Plaintiffs had their work duties removed, they were excluded from meetings, and their supervisor instructed other employees not to speak to them. *See Akins*, 420 F.3d at 1302. Another similar case, *Poole v. Country Club of Columbus, Inc.*, involved an employee who was "stripped of all responsibility, given only a chair and no desk, and isolated from conversations with other workers." 129 F.3d 551, 553 (11th Cir. 1997).

In the present case, Plaintiff fails to provide enough substantial evidence indicating that his working conditions were intolerable. The facts of the present case are clearly distinguishable from both *Akins* and *Poole*. Plaintiff maintained his job position, title, pay, and all the responsibilities he had prior to the anonymous letter and investigation. No individual at the Housing Authority ever threatened the Plaintiff or indicated that he would be fired. Plaintiff's opposition memorandum again does not cite to any evidence in the record on this point. The only references to adverse employment action appearing therein refer to a poor job performance review and to Goombs making Plaintiff a scapegoat for situations outside of Plaintiff's control. *See* Pl. Opp. at 16.

The Court finds the facts of this case very similar to *Davis v. Town of Lake Park*, 245 F.3d 1232 (11th Cir. 2001). While *Davis* was a Title VII action, the court there was also analyzing what constitutes "adverse employment action." There the court wrote, "criticisms of an employee's job performance–written or oral–that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." *Id.* at 1241. The Eleventh Circuit has reached the same result in retaliation cases under the Americans with Disabilities Act. "Negative performance evaluations, standing alone, do not constitute adverse employment action sufficient

to satisfy the second element of a prima facie case of retaliation under the ADA." *Lucas v. W.W. Grainger,* 257 F.3d 1249, 1261 (11th Cir. 2001). Plaintiff's allegations of retaliation simply do not rise to the level of "intolerable" required by the Eleventh Circuit.

Plaintiff's deposition reveals that it was his subjective belief that he would be fired, and that no one at the Housing Authority had ever spoken to him on this subject. *See* Deposition of Newman at 201-203. The Eleventh Circuit has held that an employee's subjective feelings are not relevant to a retaliation analysis. "In assessing constructive discharge claims, we do not consider a plaintiff's subjective feelings about his employer's actions. Rather, we determine whether a reasonable person in [the plaintiff's] position would be compelled to resign." *Doe v. Dekalb County Sch. Dist.,* 145 F.3d 1441, 1450 (11th Cir. 1998).

The alleged adverse employment action in this case did not cause Plaintiff any loss of title, pay, or job benefits. Under the law of this circuit, Plaintiff has not shown that he suffered an adverse employment action as a result of his participation in investigations at the Housing Authority, and his FPWA claim fails as a matter of law.

### B. First Amendment Claim

Plaintiff next alleges a violation of his First Amendment rights pursuant to 42 U.S.C. §1983. Defendant argues that this claim fails in the face of the Supreme Court's recent decision in *Garcetti v. Ceballos,* 126 S. Ct. 1951 (2006).

In *Garcetti,* the Supreme Court analyzed the First Amendment rights of public employees who make statements pursuant to their official duties. The plaintiff in the case, Ceballos, wrote a memorandum detailing his concerns over alleged inaccuracies in an affidavit used to obtain a search warrant in a pending criminal case. *Id.* at 1955-1956. After Ceballos' supervisors chose to

continue with the case against his recommendation, he claimed that he suffered retaliation in the form of a job transfer and the denial of a promotion. *See Garcetti,* 126 S. Ct. at 1956.

In rejecting Ceballos' claim, the Supreme Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1960. The dispositive issue was that Ceballos wrote the memo in his official capacity as a district attorney, rather than as a concerned citizen. *Id.*

However, given that Ceballos agreed that he wrote his memo in an official capacity, the Court had "no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id.* at 1961.

The facts of the present case are less clear cut than those present in *Garcetti,* as Plaintiff and Defendant disagree over whether Plaintiff's participation in the Board's investigation was part of his official duties. Without a legal standard for determining what constitutes an employee's "official duties" for First Amendment purposes, the Court will not make a decision on this issue at the summary judgment stage, where there appear to be clear disputes over a material fact.

However, even accepting as true Plaintiff's argument that his speech was not part of his official duties, his claim still fails as a matter of law. To establish a violation of his First Amendment rights, Plaintiff must "demonstrate that the asserted right is protected by the Constitution and that he suffered an 'adverse employment action' for exercising the right." *Akins,* 420 F.3d at 1300, *citing McCabe v. Sharrett,* 12 F.3d 1558, 1562 (11th Cir. 1994).

Accepting for purposes of this analysis that Plaintiff's speech pursuant to the investigation is protected by the First Amendment, he still fails to establish an adverse employment action as a consequence of making the speech.

> To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment. A public employee states a case for retaliation when the alleged employment action would likely chill the exercise of constitutionally protected speech. We have decided that, as a matter of law, important conditions of employment include discharges, demotions, refusals to hire or promote, and reprimands. In addition, any other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee qualifies as an adverse employment action. Thus, if an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action. Constructive discharge negatively affects an employee's job status, and therefore constitutes an adverse employment action. In other words, where working conditions are so intolerable that a reasonable person would have felt compelled to resign, the employer's conduct is an adverse employment action.

*Akins,* 420 F.3d at 1300 (internal citations omitted). As a matter of law, Plaintiff did not suffer any action that involved an important condition of employment. He was not discharged, demoted, refused a promotion or officially reprimanded. Additionally, Plaintiff herein did not suffer any conduct that altered his compensation, terms, conditions, or privileges of employment. His status as an employee was unaffected, and no one ever even mentioned to Plaintiff that he might be fired, demoted, or transferred. Plaintiff's salary, title, position and job duties were unaffected by any conduct on the part of Defendant.

Finally, the Court noted *supra* in the analysis of Plaintiff's FPWA claim that he did not suffer a constructive discharge from his employment. His allegations, accepted as true, do not constitute constructive discharge as a matter of law in the Eleventh Circuit.

Therefore, the Court does not need to determine whether Plaintiff's speech was made pursuant to his official duties in order to grant Defendant's summary judgment motion. Even accepting as true that Plaintiff's speech was protected by the First Amendment, the lack of an

adverse employment action causes his §1983 claim to fail as a matter of law.

Accordingly, it is

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (DE 25) is GRANTED.

DONE AND ORDERED in Chambers at West Palm Beach, FL, this 31st day of October 2006.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

copies to counsel of record